2007 USBC, Central District of California

FORM B104 (08/07)

## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Page 2)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

FILED

JUL 08 2010

CLER— ...KRUPTCY COURT
CENT... ...CT OF CALIFORNIA
BY
...Deputy Clerk

**PLAINTIFFS**
ROXAN HARTSTEIN

**DEFENDANTS**
TODD E. APPLEMAN

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
SILVERBERG LAW CORPORATION, 8778 West Sunset Boulevard, West Hollywood, CA 90069; (310) 556-9740

**ATTORNEYS** (If Known)
Brian B Alavi; 3250 Wilshire Blvd Ste 812
Los Angeles, CA 90010; 213-632-6060

**PARTY** (Check One Box Only)

☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin

☑ Creditor   ☐ Other

☐ Trustee

**PARTY** (Check One Box Only)

☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin

☐ Creditor   ☐ Other

☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT FOR NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(A)(6)

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property -§542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☒ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa et seq.

☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law

☐ Check if this is asserted to be a class action under FRCP 23

☐ Check if a jury trial is demanded in complaint

Demand $ 85,000.00

Other Relief Sought

2007 USBC, Central District of California

FORM B104 (08/07), page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>TODD E. APPLEMAN | BANKRUPTCY CASE NO.<br>2:10-bk-22652-B |

| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISIONAL OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>Sheri Bluebond |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE<br>7/5/10 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>ROBERT SILVERBERG |
|---|---|

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

1  ROBERT SILVERBERG, SBN 180461
   SILVERBERG LAW CORPORATION
2  8778 West Sunset Boulevard
   West Hollywood, CA 90069
3  Telephone: (310) 556-9740
   Facsimile: (310) 556-8883
4  E-Mail: silverberglaw@msn.com

5  ROBERT H. ROE, SBN 091041
   15651 Dickens Street, No. 104
6  Encino, CA 91436-3133
   Phone: (760) 443-0984
7  Fax: (818) 235-0172
   E-mail: rroe@jsnpc.com
8

9  Attorneys for plaintiff, Roxan Hartstein

10

11            UNITED STATES BANKRUPTCY COURT

12      CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

13

14  IN RE TODD E. APPLEMAN                 Case No.  2:10-bk-22652-BB

15

16                                         COMPLAINT FOR
                                           NONDISCHARGEABILITY PURSUANT
17  ROXAN HARTSTEIN,                       TO 11 U.S.C. §523(A)(6)

                    Plaintiff,
18

19          vs.                            ASSIGNED TO HON. SHERI BLUEBOND

20  TODD E. APPLEMAN

21                  Defendant.

22

23

24  Plaintiff Roxan Hartstein alleges:

25          1.    Plaintiff,  Roxan Hartstein ("Hartstein") is, and at all relevant times was, a

26  resident of the County of Los Angeles and a citizen of the State of California.

27

28

─────────────────────────────────────────
                    COMPLAINT

2.    At all relevant times, defendant Todd E. Appleman ("Appleman") was a resident of the County of Los Angeles and a citizen of the State of California.

3    This court has jurisdiction over the proceeding pursuant to 28 U.S.C 157(b)(2)(I).

4.    Venue for this adversary proceeding is proper in this court pursuant to 28 U.S.C. 1409.

## COMMON ALLEGATIONS

5.    Plaintiff incorporates and re-alleges Paragraphs 1- 4, above, as though fully set forth herein.

6.    On or about December 10, 2005, Hartstein and Appleman entered into a written contract entitled, "Agreement for Design Services," under which Hartstein agreed to provide her services as an interior/exterior designer in connection with Appleman's home remodeling project.

7.    Hartstein fulfilled her obligations under the above contract; however, in April 2007, Appleman wrongfully, maliciously and without reasonable or probable cause sued Hartstein in the Los Angeles Superior Court, Central District, case number BC368977 (the "Superior Court action"). Specifically, Appleman alleged causes of action against Hartstein in the Superior Court action for breach of contract, negligence, fraud, breach of implied warranty, declaratory relief, breach of Business and Professions Code section 7031 and conspiracy based upon the following false allegations, among others: Hartstein represented herself to be a general contractor and was acting as such with respect to the remodeling project; she had promised the cost of the project would not exceed $200,000.00; a fiduciary relationship existed between Hartstein and Appleman; Hartstein's contractual duties with respect to the remodeling project extended beyond those of a designer; Hartstein was the partner of Rolland Sones, an unlicensed general contractor handling the remodeling project; Hartstein agreed to obtain all necessary permits for the remodeling project; Hartstein fraudulently overcharged Appleman for items she

Silverberg Law Corporation
8770 West Sunset Boulevard
West Hollywood, CA 90069
(310) 556-9740
FAX (310) 556-8883

— 2 —

purchased on his behalf; and Hartstein improperly took money belonging to Appleman. These allegations were false and were known to Appleman to be false at the time he filed and prosecuted the Superior Court action.

8.    On November 16, 2006, Appleman wrongfully, maliciously and without reasonable or probable cause filed an administrative complaint against Hartstein with the California Contractors State License Board (the "CSLB action"), falsely alleging that Hartstein had acted illegally as a contractor on the home remodeling project without a contractor's license.

9.    On February 28, 2008, as a direct consequence of the wrongful and malicious actions and accusations of Appleman described above, Hartstein filed a voluntary petition with the United States Bankruptcy Court, case number 1:08-bk-11190 MT under Chapter 7 of the United States Bankruptcy Code.

10.    On May 23, 2008, Appleman initiated adversary proceedings against Hartstein in the bankruptcy action by filing a Complaint to Deny Debtor Discharge and to Determine Non-Dischargeability of Debts, adversary action number 1:08-ap-01359-MT (the "Bankruptcy Adversary action") based upon the same false allegations described in paragraph 8 of this Complaint. In the Bankruptcy Adversary action, Appleman made claims against Hartstein under 11 U.S.C. section 523(a)(2)(A) for money obtained by false pretenses and false representations, section 523(a)(4) for larceny and section 523(a)(6) for willful and malicious injury.

11.    Trial of the Bankruptcy Adversary action took place on June 25, 2009. On August 5, 2009, judgment was entered in favor of Hartstein and against Appleman on all claims raised in the Bankruptcy Adversary action. The Bankruptcy Court specifically stated in its written Findings of Fact and Conclusions of Law that Appleman's "claims are frivolous and unsupported by fact and by law." The Bankruptcy Court further stated that Hartstein "should not

Silverberg Law Corporation
8776 West Sunset Boulevard
West Hollywood, CA 90069
(310) 556-9740
FAX (310) 556-8883

— 3 —
**COMPLAINT**

have been put through this trial." Hartstein's alleged debts to Appleman were discharged by the Bankruptcy Court. A true and correct copy of the Bankruptcy Court's Findings of Fact and Conclusions of Law is attached as *Exhibit A* to this Complaint and by this reference is incorporated herein as though set forth in full.

12.     On October 2, 2009, the Superior Court action was dismissed as to Hartstein based upon the ruling of the Bankruptcy Court, and that dismissal is now final. Hartstein is also informed and believes and thereon alleges that the CSLB action was terminated in favor of Hartstein.

13.     Appleman acted without reasonable or probable cause when he filed the Superior Court action, the CSLB action and the Bankruptcy Adversary action. Appleman knew at all times that the factual allegations and claims he made against Hartstein were false.

14.     The wrongful and malicious acts and statements of Appleman, described above, legally and proximately caused plaintiff Roxan Hartstein to incur attorneys' fees, litigation costs and other monetary expenses in an amount exceeding the sum of $85,000 to defend against Appleman's various claims and actions. Hartstein is also entitled to receive interest at the legal rate on those fees, costs and expenses from and after the dates they were incurred.

15.     The wrongful and malicious actions and statements of Appleman, described above, further justify an award of general damages to Hartstein based upon the following facts: plaintiff's reputation in the local design and construction industry was seriously harmed; plaintiff suffered severe psychological trauma and severe emotional distress when she was forced to file a Chapter 7 bankruptcy action, defend herself against the various unjustified legal and administrative proceedings referenced above, and liquidate her belongings; plaintiff lost the ability to obtain credit on reasonable and normal terms; plaintiff's design business incurred other consequential damages, including lost profits. Plaintiff will seek leave of Court to amend this

Silverberg Law Corporation
8778 West Sunset Boulevard
West Hollywood, CA 90069
(310) 556-9740
FAX (310) 556-8883

— 4 —
**COMPLAINT**

Complaint to state the full amount of her special and general damages when the full extent of those damages becomes known.

16.    In doing the acts described in this Complaint, Appleman acted intentionally, with a conscious disregard of the known rights of Hartstein, and did so in an oppressive manner.

17.    On March 16, 2010 Plaintiff filed a complaint against Todd E. Appleman in Superior Court of California, Central District alleging Malicious Prosecution.

18.    The defendant was personally served with the lawsuit on March 25, 2010, after which he filed the instant Chapter 7 bankruptcy action on April 2, 2010.

## FIRST CAUSE OF ACTION

### (Claim for Non-Dischargeability Pursuant to 11 U.S.C. §523(a)(6))

19.    Plaintiff incorporates and re-alleges Paragraphs 1- 18, above, as though fully set forth herein.

20.    Defendant willfully and maliciously injured the plaintiff by his actions as alleged above.

21.    Plaintiff has been damaged by defendant's actions in the amount to be proven at trial, but in no event less than $85,000.00, plus interest as allowed by law.

## PRAYER FOR DAMAGES

WHEREFORE, plaintiff Roxan Hartstein prays for damages and other judicial relief as follows:

1.  For the debt of Defendant to Plaintiff not be discharged;

2.  For compensatory damages according to proof, but in no event less than $85,000.00, plus interest as allowed by law;

Silverberg Law Corporation
8776 West Sunset Boulevard
West Hollywood, CA 90069
(310) 556-9740
FAX (310) 556-8883

— 5 —
**COMPLAINT**

3.  For an award of punitive or exemplary damages in an amount sufficient to punish Appleman and the other defendants and deter them from engaging in similar conduct in the future;

4.    For Hartstein's costs and expenses of suit; and

5.    For such other and further relief as the Court deems just and proper.

SILVERBERG LAW CORPORATION

By: _____
ROBERT SILVERBERG
*Attorney for Plaintiff,*
Roxan Hartstein

Silverberg Law Corporation
8776 West Sunset Boulevard
West Hollywood, CA 90069
(310) 556-9740
FAX (310) 556-8883

— 6 —
**COMPLAINT**

**EXHIBIT  A**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

FILED & ENTERED

AUG 05 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams   DEPUTY CLERK

In re:

Roxan Stinson Hartstein,

                                    Debtor(s).

Todd Appleman

                                    Plaintiff(s),

Vs.

Roxan Stinson Hartstein

                                    Defendant(s).

Case No.: 1:08-bk-11186-MT

Adversary No.: 1:08-ap-01359-MT

Chapter: 7

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT**

Date: June 25, 2009
Time: 10:00am
Location: Courtroom 302

Trial was held on June 25, 2009. The following witnesses testified: Roland Sones, Lukas Quach, Paul Le, Plaintiff Todd Appleman and Defendant Roxan Hartstein. Todd Appleman introduced exhibits 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 26, 32, 34, 35, 36, 37, 38, 39, 40, 43, 44, 45, 46.1 to 46.33. Roxan Hartstein introduced exhibits 101 to 120. Much of the exhibits are inadmissible as they are hearsay or irrelevant. However, they will be considered, as the parties are not attorneys, and the Court can determine the proper weight of such evidence. All testimony and documents proffered by both parties has been considered in an attempt to understand whether any cause of action was proven.

- 1

718030039870 31

003980

FINDINGS OF FACT

On or about December 10, 2005, Mr. Appleman and Ms. Hart stein entered into an Agreement for Design Services. (See Ex. 13). Mr. Appleman was referred to Ms. Hartstein by Mr. Rolland Sones.  Mr. Sones was working on a home as a general contractor in Mr. Appleman's neighborhood.  Mr. Appleman, impressed by Mr. Sones' work, entered into a contract to hire Mr. Sones as a general contractor to remodel his home.

Mr. Appleman alleged that his contract with Ms. Hartstein required her to furnish labor and materials for the remodeling of his home, and that Ms. Hartstein promised that she would complete the remodeling project for a budget not to exceed $200,000. Mr. Appleman asserted that on a number of occasions he communicated to Ms. Hartstein that he had $200,000 in his C.D. account that was accumulating interest, and was to be used for the remodeling.  In addition, Mr. Appleman declares that there exists a fiduciary relationship between him and Ms. Hartstein, and that she as a steward of his money should have informed him of the infeasibility of completing his desires within $200,000.

The design contract that Mr. Appleman and Ms. Hartstein entered into states that Ms. Hartstein is to provide "Interior/Exterior design" for the projects specifically contemplated in the Project List. (See Ex. 13 at 2, ¶ 2).  There is nothing in the contract to suggest that Ms. Hartstein was to provide labor or materials for the remodeling of the house other than directing Mr. Appleman to various venders she knew for fabrics, home furnishings and custom made finishes.  (See Ex. 13 at 2, ¶ 2).  Furthermore, Mr. Appleman has a separate contract with Mr. Sones stating that Mr. Sones as the general contractor is to provide all the material and labor necessary for the remodeling.  (See Ex. 43 at 1).

Mr. Appleman's alleged promise of $200,000 as a final budget is simply unsupported, and plaintiff's assertions of such are not credible. First, nowhere in the contract is the figure

- 2

1   $200,000 present. (See Ex. 13). The contract states solely that Mr. Appleman is required to

2   pay Ms. Hartstein a "design fee of 10% of the budget discussed;" the contract provides no

3   support or mention of Mr. Appleman's allegations that the contract requires Ms. Hartstein to

4   complete the remodeling within $200,000. (See Ex. 13 at 2). The $200,000 that Mr.

5   Appleman had in his C.D. account was simply used as a base for deciding the amount that Mr.

6   Appleman was to pay Ms. Hartstein for her design services. Second, there is no evidence to

7   suggest that Mr. Appleman and Ms. Hartstein entered into any verbal contract whereby Ms.

8   Hartstein promised to complete the remodeling of Mr. Appleman's house for the $200,000 sum

9   that he alleges.

10

11          There also is no fiduciary relationship between Mr. Appleman and Ms. Hartstein. Their

12  relationship was solely contractual. Ms. Hartstein performed her obligations under the contract

13  by developing a design concept, taking Mr. Appleman shopping for finishes as well as

14  merchandise, and providing him with a variety of price options to choose from. Mr. Appleman

15  is a steward of his own money, and it is his responsibility to select the materials that he deems

16  most fitting to his finances. Mr. Appleman on a number of occasions chose the more

17  expensive merchandise, which would further suggest the absence of any concrete final

18  budget, and Mr. Appleman's willingness to spend more than $200,000. (See, e.g., Ex. 17; 35)

19          Mr. Appleman further alleges that Ms. Hartstein verbally, in writing and by her actions

20  represented herself as a general contractor. Mr. Appleman claims that Ms. Hartstein

21  represented that she could contract to perform general construction, engineering, architectural

22  design, electrical work and home improvement when she was not a licensed contractor. Mr.

23  Appleman states that Ms. Hartstein assumed the role of a de-facto general contractor and

24  consequently a partner to Mr. Sones by conducting the communication between Mr. Sones

25  and Mr. Appleman. Mr. Appleman claims that since Ms. Hartstein took the "alpha position" and

- 3 -

1  started to act like the "superintendent" of the remodeling project, she thus became a general

2  contractor. To support these allegations, Mr. Appleman points to worker negligence and Ms.

3  Hartstein's assurances that she would attempt to extract better work performance from them.

4

5  Mr. Appleman states that he was caused extreme distress and hardship when he had to clean

6  up after the workers every night, as they left the worksite in an inhabitable condition with dust,

7  debris and food everywhere. Mr. Appleman also points to problems with the pool and the

8  Jacuzzi as proof of the crew's negligence and "general sloppy work style." (See Ex. 46.8 at 1).

9

10  According to Mr. Appleman, the Jacuzzi was not working, and the pool was installed incorrectly

11  in addition to being unusable due to high calcium levels caused by debris, nails and stones

12  that were allowed to drift into the pool. (See Ex. 46.8 at 1). Mr. Appleman asserts that he

13  conveyed these concerns to Ms. Hartstein who assured him that she would solve these

14  problems, and that he should come to her with any concerns about Mr. Sones or his workers.

15

16  Mr. Appleman's neighbors were not too pleased with the noise and the parking situation

17  that the remodeling project was creating. In early May 2006, Mr. Sones' car was keyed, and in

18  response Ms. Hartstein wrote two letters, one polite and one rude, to the neighbors and sent

19  them to Mr. Appleman for him to consider sending to the neighbors, if he wished. (See Ex.

20  32). Mr. Appleman gave the more polite letter to the neighbors, and did not pass on the other

21  impolite and humorous letter. Mr. Appleman points to such a letter as once again proof of Ms.

22

23  Hartstein taking the "superintendent" role of policing the whole project.

24  Ms. Hartstein disputes these allegations, and states that at no point did she represent

25  herself to be a general contractor or Mr. Sones partner. She asserts that as a designer her

26  duties did not include installation, general construction, engineering or electrical work.

27

28  There is absolutely no evidence to suggest that Ms. Hartstein's duties extended beyond

that of a designer. Ms. Hartstein did not contract with Mr. Appleman to be his general

- 4

1  contractor either in writing, verbally or through her actions. Mr. Sones was the only general

2  contractor in Mr. Appleman's remodeling project. Ms. Hartstein as a designer was solely

3  responsible for interior and exterior design, and ensuring that her plan was brought to fruition.

4  Ms. Hartstein was not responsible for any installations, general construction, engineering or

5  electrical work; all these duties were assigned to Mr. Sones as per his contract with Mr.

6

7  Appleman. (See Ex. 43).

8      Mr. Appleman fails to provide any support for his allegation that Ms. Hartstein was Mr.

9  Sones' partner. Firstly, Mr. Appleman entered into a separate contract with Mr. Sones

10  whereby both parties agreed that Mr. Sones was to serve as the general contractor. (See Ex.

11

12  43). There are no documents to suggest that Ms. Hartstein at any point entered into

13  partnership with Mr. Sones or that Ms. Hartstein contracted with Mr. Appleman to provide

14  contractor services. Secondly, Ms. Hartstein and Mr. Sones never shared any money between

15  themselves. Mr. Sones and Ms. Hartstein provided Mr. Appleman with separate invoices, and

16  at no stage of the remodeling project were payments or profits intermingled. Ms. Hartstein was

17  not even fully aware of the exact amount Mr. Sones was charging Mr. Appleman. Thirdly, Ms.

18

19  Hartstein did absolutely no physical work on the premises.

20      Furthermore, there is no basis for Mr. Appleman's claims that Ms. Hartstein by acting as

21  a peacemaker in addition to policing the project represented herself to be a de-facto general

22  contractor and in partnership with Mr. Sones. Ms. Hartstein's relationship with Mr. Sones

23

24  consisted of nothing more than normal interactions between a designer and a general

25  contractor. Ms. Hartstein interacted with Mr. Sones in order to ensure that her design plan was

26  implemented properly, and her client was pleased. It is true that Ms. Hartstein reassured Mr.

27  Appleman on a number of occasions that she would sort out any conflicts between Mr.

28  Appleman and Mr. Sones, and she did comfort Mr. Appleman by stating that she would look

- 5

003980

1   into solving the problems caused by worker negligence. These assurances however, do not

2   show that Ms. Hartstein was the "supervisor" or "superintendent" of the project and

3   subsequently the de-facto general contractor. Rather these verbal assurances are proof of

4   Ms. Hartstein's helpful nature and willingness to go beyond her duties as a designer to ensure

5   that Mr. Appleman was content with the remodeling.

6

7   Mr. Appleman accuses Ms. Hartstein of poor work performance. However, Mr.

8   Appleman has failed to provide any evidence of poor workmanship on the part of Ms.

9   Hartstein. During his testimony Mr. Appleman was unable to point to Ms. Hartstein alone as

10  the cause of any defective work. Rather Mr. Appleman claimed that Ms. Hartstein as a partner

11

12  and supervisor of Mr. Sones' work was responsible for his poor construction. Mr. Appleman

13  may have legitimate concerns about the nature of Mr. Sones construction work; however, any

14  complaints against Mr. Sones are irrelevant and not at issue here.

15

16  Mr. Appleman in his complaint asserted that Ms. Hartstein in writing promised that she

17  would obtain all the necessary permits for the remodeling project. However, he has once

18  again failed to provide evidentiary support for his allegations. During his testimony, Mr.

19  Appleman admitted that he did not have any written proof or evidence to suggest that Ms.

20  Hartstein made such a promise. Mr. Appleman evasively stated that these were his attorney's

21  words in the complaint, and he disavowed the allegation.

22

23  In addition, Mr. Appleman alleged that Ms. Hartstein failed to provide receipts for most

24  of the items she purchased, and that she provided fictitious and fraudulent invoices. Mr.

25  Appleman in his complaint, and Mr. Paul Le during his testimony specifically point to the

26  invoice of the garage door as an example of Ms. Hartstein fraudulently upcharging Mr.

27  Appleman. (See Ex. 35). It is apparent however, that Ms. Hartstein simply charged Mr.

28  Appleman 10 percent above the trade cost, as is stipulated by the design contract. (See Ex.

- 6

1  13 at 2, ¶ 3). The design agreement states explicitly that that the client is required to pay the

2  designer "10% above trade cost on merchandise." (See Ex. 13 at 2, ¶ 3). Moreover, Mr.

3  Appleman has failed to present any invoices which show that Ms. Hartstein has improperly

4  taken money from Mr. Appleman. In addition, Paul Le admitted that they had difficulty

5  accounting for their payments as a number of receipts and invoices were misplaced or lost by

6  their former attorney. The evidence introduced by Mr. Appleman demonstrated that many

7

8  invoices were produced to him. (See Ex. 17).

9       Around June to August 2006, unhappy with the remodeling progress, and after

10  $177,000 had already been spent, Mr. Appleman directed both Mr. Sones and Ms. Hartstein to

11  stop working on his house. Mr. Appleman states that he then hired a new contractor to correct

12  the errors made by Ms. Hartstein and Mr. Sones, in addition to finishing the project, all of which

13  cost him $100,000. Ms. Hartstein was willing to finish the project but not permitted to do so.

14

15       On November 16, 2006, Mr. Appleman filed a complaint with the contractors state

16  license board against both Mr. Sones and Ms. Hartstein. (See Ex. 23). Subsequently, on April

17  5, 2007, Mr. Hartstein [Appleman] filed a complaint in Los Angeles Superior Court against Mr. Sones and

18  Ms. Hartstein for Breach of Contract, Negligence, Fraud, Breach of Implied Warranty,

19

20  Declaratory Relief, Breach of Business and Professions Code § 7031 and Conspiracy. (See

21  Ex. 39 at 3).

22       On May 31, 2007, the contractor's state license board issued a violation warning to Ms.

23  Hartstein for entering into a contract to provide work when she did not have a contractors

24  license. (See Ex. 24). On June 9, 2009, the Superior Court issued a ruling against Mr. Sones

25  in the amount of $15,030, payable to the Superior Court by March 2010 for contracting without

26  an active state contractors license. The Court ruled that Mr. Appleman was not eligible to

27

28

-7

003980

1    claim restitution because Mr. Appleman was aware of Mr. Sones' inactive license but yet

2    entered into a contract with Mr. Sones.

3         Mr. Appleman however alleges that he was never aware of Mr. Sones' inactive license.

4
5    Mr. Appleman claims that Mr. Sones illegally obtained a copy of his passport and forged his

6    signature on a letter signed by him authorizing Mr. Sones to pull permits for him even though

7    Mr. Sones was not licensed. (See Ex. 26). Not only did Mr. Appleman not provide any proof

8    to support these allegations, but he could not explain why the letter contains a signature that

9    looks just like the signature on other documents he submitted in this case. (See Ex. 13; 23;

10
11   26). Mr. Appleman also never explained how Mr. Sones could have stolen his passport only to

12   return it later to Mr. Appleman's possession.

13        On February 28, 2008, Ms. Hartstein filed a voluntary petition under chapter 7 of the

14   Bankruptcy Code. Subsequently on May 23, 2008, Mr. Appleman initiated adversary

15   proceedings by filing a Complaint to Deny Debtor Discharge and to Determine Non-

16
17   Dischargeability of Debts. Mr. Appleman made claims under 11 U.S.C. § 523(a)(2)(A) for

18   money obtained by false pretenses and false representations, § 523(a)(4) for larceny and §

19   523(a)(6) for willful and malicious injury. On August 7, 2008, Ms. Hartstein's bankruptcy case

20   was closed, and her debts discharged.

21        At trial, Mr. Sones, Mr. Quach and Ms. Hartstein's testimonies were credible. Paul Le

22
23   was credible as well, however his testimony was largely irrelevant for he had no firsthand

24   knowledge. Mr. Appleman's testimony on the other hand was not credible. He was evasive

25   and contradicted himself. Mr. Appleman exaggerated the facts and continuously repeated

26   irrelevant conclusory statements that had no foundation in fact or in law. Mr. Appleman

27   demonstrated throughout pretrial proceedings and the trial that he does not listen to any

28   instructions or information with which he does not agree. Mr. Appleman refused to look at an

- 8 -

1  exhibit which did not support his allegations. Despite repeated instructions and guidance from

2  the Court before and during trial, Mr. Appleman appeared vindictive and more concerned with

3  expressing his problems with Mr. Sones and the distress that the remodeling project had

4  caused him, rather than focusing on his alleged causes of action against Ms. Hartstein.

5
                                CONCLUSIONS OF LAW

6

7      This adversary proceeding is brought in connection with Ms. Hartstein's chapter 7 case

8  and hence this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

9  157(b)(2)(I) and 1134. This is a core proceeding under 28 U.S.C. § 157(b)(1).

10
       A party seeking non-dischargeability of debt under § 523(a) has the burden of proving
11

12  each element of the claim by a preponderance of evidence. See Grogan v. Garner, 498 U.S.

13  279, 287-91 (1991). Thus, to establish non-dischargeability pursuant to § 523(a), Mr.

14  Appleman must prove each element of his claims of false representations, larceny, and willful

15  and malicious injury by a preponderance of evidence. See id.

16
   § 523(a)(2)(A) claim:
17

18      In order for debt to be non-dischargeable under § 523(a)(2)(A), money, property or

19  services must be obtained by false pretenses, representations or actual fraud. Section

20  523(a)(2)(A) requires that the false representations and pretenses giving rise to the debt must

21  have been knowingly and fraudulently made with the intent to deceive, manipulate or defraud.

22  See In re Anastas, 94 F.3d 1280, 1283-84 (9th Cir. 1996); in re Eashai, 167 B.R. 181, 183 (9th
23
   Cir. BAP 1994). Under some circumstances, reckless representations may be sufficient to
24
25  except the debt from discharge. See in re Mercado, 144 B.R. 879, 880 (Bankr. C.D. Cal.

26  1992).

27      In addition, under § 523(a)(2)(A), it is necessary that the plaintiff justifiably relied on the

28  false representations. See Field v. Mans, 516 U.S. 59, 77 (1995); In re Hashimi, 104 F.3d

-9-

003980

1    1122, 1125 (9th Cir. 1996). The inquiry focuses on whether the falsity of the representation

2    was or should have been readily apparent to the individual to whom it was made. See In re

3    Kirsch, 973 F.2d 1454, 1461 (9th Cir. 1992). A person is required to use his or her senses and

4    cannot recover if he or she blindly relies on the misrepresentation, the falsity of which would

5    have been apparent if he or she took the opportunity to make a cursory examination or

6    investigation. See Field, 516 U.S. at 71; In re Kirsch, 973 F.2d at 1458.

7

8        Mr. Appleman's § 523(a)(2)(A) claim fails. Mr. Appleman's accusations that Ms.

9    Hartstein made false representations that she would complete the project within $200,000 and

10    become a general contractor along with Mr. Sones are unfounded, and no credible evidence

11    was introduced to substantiate these claims. Ms. Hartstein never made any false

12    representations. At no stage did Ms. Hartstein represent that she would complete the project

13    for a budget of $200,000 or under. Ms. Hartstein never represented either verbally or through

14    her actions that she was the general contractor.

15

16        Any actions taken by Ms. Hartstein during the engagement were not intended to

17    deceive, manipulate or defraud, but were efforts taken to assist her client. The only

18    representation that Ms. Hartstein made verbally, in writing and through her actions, was

19    representing herself as a designer, committed to executing her duties and helping Mr.

20    Appleman through the course of the project. Plaintiff's claim under § 523(a)(2)(A) also fails

21    because there was no reasonable reliance as Mr. Appleman had completely unjustified and

22    unsupported expectations. It remains unclear as to how Mr. Appleman could have thought that

23    his lengthy remodeling list could have been completed for $200,000.

24

25

26        The evidence shows that Ms. Hartstein had every intention of performing her

27    obligations, and took concrete steps to complete the project and perform under the contract.

28

718O3OO3987O77

1   She developed a design plan, and assisted her clients in selecting home furnishings and

2   material finishes as per their liking and their desired price range.

3       A remodeling project is often fraught with miscommunications. Mr. Appleman appears

4   to have either intentionally or mistakenly misunderstood the cost structure of the project and

5

6   Ms. Hartstein's responsibilities under the contract. Despite this misunderstanding, Ms.

7   Hartstein made every effort to accommodate Mr. Appleman's demands. Miscommunication

8   and misinterpretation do not equate to fraud, or a § 523 claim.

9   § 523(a)(4) claim:

10       Larceny under § 523(a)(4) is the fraudulent and wrongful taking of the property of

11   another, with the intent to convert the property to the taker's use without the consent of the

12   owner. See In re Montes, 177 B.R. 325, 331 (Bankr. C.D. Cal. 1994). Thus, in larceny the

13

14   appropriation is unlawful at the outset. See In re Wada, 210 B.R. 572, 576 (9th Cir. BAP

15   1997); In re Sandoval, 341 B.R. 282, 294 (Bankr. C.D. Cal. 2006)

16       Mr. Appleman's claim against Ms. Hartstein for larceny under § 523(a)(4) is unfounded

17

18   and baseless. Mr. Appleman has failed to provide any evidence to support his claim that Ms.

19   Hartstein was improperly overcharging him for the purchase of materials. Mr. Appleman has

20   not brought forward one invoice to substantiate his claim that Ms. Hartstein was wrongfully

21   taking money from him. Paul Le admitted that they were having difficulty accounting for their

22   payments, and that a number of invoices were misplaced or with their former attorney. Despite

23

24   repeated admonishments, Mr. Appleman appeared to believe it was Ms. Hartstein's burden to

25   disprove his bald allegations as his sole evidence was his own highly confusing, rambling

26   conclusory allegations.

27

28

- 11

718030003987086

§ 523(a)(6):

In order to meet the willful and malicious requirement of § 523(a)(6), the debtor must have committed a wrongful deliberate and intentional act that necessarily leads to injury. See Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998); In re Molina, 228 B.R. 248, 251 (9th Cir. 1998). A specific intent to injure is not necessary to satisfy the willful standard; rather the standard can be satisfied if the debtor subjectively believed that injurious consequences are substantially certain to result from his or her conduct. See In re Cecchini, 780 F.2d 1440, 1443 (9th Cir. 1986). An injury inflicted intentionally and deliberately, either with the intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act, constitutes "willful and malicious conduct" under § 523(a)(6). See Geiger, 523 U.S. at 61. Negligent or reckless actions do not constitute "willful and malicious" conduct. See id. at 64. Exception to discharge is limited to conduct which may be classified as an intentional tort, and does not encompass conduct which is merely negligent. See id.

Section § 523(a)(6) generally refers to torts and not to contracts. See In re Riso, 978 F.2d 1151, 1154 (9th Cir. 1992). A debt arising under a mere breach of contract absent any showing that the purpose of the breach was to cause injury, or that harm was almost certain to result, is not a non-dischargeable debt within § 523(a)(6). See In re Jercich, 238 F.3d 1202, 1205 (9th Cir. 1992). A breach of contract must be accompanied by some form of tortious conduct that gives rise to willful and malicious injury. See In re Riso, 978 F.2d at 1154.

Mr. Appleman has failed to prove that Ms. Hartstein's actions were willful or malicious. Allegations of poor workmanship, defective construction, and incorrect installations not only do not rise to willful and malicious harm, but Mr. Appleman also has not shown that Ms. Hartstein caused the damages. As discussed earlier, Ms. Hartstein was not hired as a general contractor, she did not represent herself as a general contractor, and she was not Mr. Sones'

1   partner.  Even if Mr. Sones' work did cause the extreme damage alleged, Ms. Hartstein is not

2   responsible for Mr. Sones' construction.

3

4                                    CONCLUSION

5        The plaintiff's § 523(a) claims are frivolous and unsupported by fact and by law.  The

6   defendant should not have been put through this trial.  Judgment will be entered in favor of the

7

8   defendant.  Accordingly, the defendant's alleged debts to the plaintiff are discharged.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28      DATED: August 5, 2009

_____
United States Bankruptcy Judge

- 13

7180300987095

003980

**NOTE TO USERS OF THIS FORM:**

1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (specify) **FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT**

was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of _____, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

Todd Appleman
The Appleman Group
6830 Cahuenga Pk Trail Ste 101
Los Angeles, CA 90068

Roxan Stinson Hartstein
6245 Bristol Parkway #365
Culver City, CA 90230

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

- 14

ADDITIONAL SERVICE INFORMATION (if needed):

| Category I (Served by the Court via Notice of Electronic Filing ("NEF"). | Category II (Served by Court via U.S. mail). |
|---|---|
|  |  |

Category III (To be served by the lodging party).

- 15 -

003980

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED & ENTERED

AUG 05 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

Roxan Stinson Hartstein,

                                    Debtor(s).

Todd Appleman

                                    Plaintiff(s),

Vs.

Roxan Stinson Hartstein

                                    Defendant(s).

Case No.: 1:08-bk-11190-MT

Adversary No.: 1:08-ap-01359-MT

Chapter: 7

**JUDGMENT ORDER ON TODD
APPLEMAN'S COMPLAINT TO
DETERMINE DEBT NON-DISCHARGABLE**

Date: June 25, 2009
Time: 10:00am
Location: Courtroom 302

This matter having come on for trial before the Court on Thursday, June 25, 2009, the Court having heard evidence both for and against the relief requested by Plaintiff Todd Appleman, the Court having entered Findings of Fact and Conclusions of Law concurrently herewith, appearances being noted on the record, and good cause appearing therefor,

//

//

//

///

- 1 -

003980

1       IT IS ORDERED, ADJUDGED, AND DECREED that the relief sought by Plaintiff Todd

2 Appleman in his Complaint for Non-Dischargeability of Debt under 11 U.S.C. §§ 523(a)(2)(A),

3 523(a)(4) and 523(a)(6) is hereby DENIED.

4       JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT HARTSTEIN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY

ROBERT SILVERBERG, SBN 180461
SILVERBERG LAW CORPORATION
8778 West Sunset Boulevard
West Hollywood, CA 90069
Telephone: (310) 556-9740
Facsimile: (310) 556-8883

RECEIVED

JUL 08 2010

CLERK U S  B^NKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORN A
BY_____Deputy Clerk

*Attorney for Plaintiff* Roxan Hartstein

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:   TODD E. APPLEMAN

Debtor.

CHAPTER  7

CASE NUMBER  2:10-bk-22652-BB

ADVERSARY NUMBER

ROXAN HARTSTEIN

Plaintiff(s),

vs.

TODD E. APPLEMAN

Defendant(s)

*(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*

# SUMMONS AND NOTICE OF
# STATUS CONFERENCE

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you.  If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint.  You must also send a copy of your written response to the party shown in the upper left-hand corner of this page.  Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|

☒  **255 East Temple Street, Los Angeles**          ☐  **411 West Fourth Street, Santa Ana**

☐  **21041 Burbank Boulevard, Woodland Hills**     ☐  **1415 State Street, Santa Barbara**

☐  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference.  Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval.  The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By: _____
        *Deputy Clerk*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*

# F 7004-1